UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL MUTAMBO KALEMBO,

Plaintiff,

v.

WASHINGTON YOUTH SOCCER, NORTHSHORE YOUTH SOCCER ASSOCIATION, and JOHN/JANE DOES 1-10,

Defendants.

CASE NO. 2:25-cv-00169-RAJ-BAT

**REPORT AND RECOMMENDATION**

Defendants Northshore Youth Soccer Association (NYSA) and Washington Youth Soccer (WYS) move for summary judgment on *pro se* Plaintiff Gabriel Mutambo Kalembo's claims of (1) racial discrimination in violation of 42 U.S.C. § 1981, (2) racial discrimination in violation of the Washington Law Against Discrimination (WLAD), RCW § 49.60, (3) tortious interference with business expectancy, and (4) defamation. **Dkts. 37, 40**; *see* Dkt. 5, at 5–6 [hereinafter "Complaint"]. The Court recommends **GRANTING** summary judgment in favor of Defendants on Mr. Kalembo's federal § 1981 claim because NYSA and WYS have shown that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of

law. The Court also recommends **DECLINING** supplemental jurisdiction over the other claims and **DISMISSING** those state claims without prejudice.[1]

## BACKGROUND

In January 2025, Mr. Kalembo filed his civil rights complaint alleging racial discrimination in violation of 42 U.S.C. § 1981 alongside state law claims of a violation of WLAD, tortious interference with business expectancy, and defamation. Complaint 1–8. Mr. Kalembo was employed by NYSA as a head soccer coach for one of their youth teams Sound FC. *Id.* at 3. On May 24, 2024, NYSA terminated Mr. Kalembo's employment because he had violated a non-compete clause by renting fields, buying insurance, and charging families for both. *Id.*; Dkt. 41-6, at 1 (NYSA Notice of Termination dated May 24, 2024) [hereinafter "NYSA Notice of Termination"]. In September 2024, defendant WYS, a Washington state affiliate of the United States Youth Soccer Association and the United States Soccer Federation that oversees numerous soccer associations including NYSA, informed Mr. Kalembo that it had received information about federal convictions that had not be disclosed and as such he was permanently ineligible to participate in activities and events under the jurisdiction of WYS and United States Youth Soccer. Complaint 4; Dkt. 38-4, at 2 (WYS Letter re: Eligibility Determination dated September 18, 2024) [hereinafter "WYS Eligibility Determination"].[2] The

---

[1] By separate order, the Court denied Mr. Kalembo's motion to complete the summary judgment record or for relief from any expired deadlines, Dkt. 46, because he did not demonstrate good cause or excusable neglect for failing (1) to file exhibits with his opposition to WYS's summary judgment motion, (2) to file an opposition to NYSA's summary judgment motion, and (3) to comply with the discovery deadline and the order compelling discovery. *See* Fed. R. Civ. P. 6(b)(1)(B).

[2] In the Complaint, Mr. Kalembo refers to this letter as being dated in July 2024, and the letter itself is dated "7/18/2024." Similarly, a WYS appeals decision refers to having communicated its original disqualification decision in July 2024. Dkt. 38-7, at 2. It appears, however, that this may be a typographical error and the correct date is September 18, 2024, because the letter refers to receiving "new information regarding your Background Check submitted on September 14,

disqualifying federal convictions were felony attempt and conspiracy to commit fraud (including restitution of $266,255) and felony money laundering (including restitution of $298,008). Levesque Decl. ¶ 8; Dkt. 38-3, at 2–3.

Mr. Kalembo "**does not dispute** that he has a criminal past but **maintains that he never lied** on any background check." Complaint 4 (emphasis in original). This is so even though in his April 2024 background check he marked "No" to each question about past convictions. Levesque Decl. ¶ 7; Dkt. 38-2, at 2. Mr. Kalembo asserts that NYSA's reasons for terminating his coaching contract based on violating a non-compete clause were pretextual, despite admitting to starting his own club and training players privately, and the real reason for doing so was racial discrimination. Complaint 3–4. Similarly, Mr. Kalembo contends that WYS's prohibition based his past felony offenses was pretextual for its "**bias against Black individuals** who attempt to operate their own clubs." *Id.* at 4 (emphasis in original). Mr. Kalembo does not, however, submit evidence in support of racial discrimination aside from his own personal beliefs that it must have occurred.

Earlier, the Court granted Defendants' separate motions to compel discovery, granted their requests for reasonable expenses for bringing their motions to compel, and stayed enforcing the fee assessment out of concern that Mr. Kalembo, proceeding *in forma pauperis*, may not have the financial means to satisfy the monetary sanctions. Dkts. 34, 36. Defendants assert that Mr. Kalembo has not, as promised in his response regarding a show-cause order, provided the requested discovery materials. Dkt. 37, at 6; Dkt. 40, at 5. As for the current summary judgment

---

2024. WYS Eligibility Determination 2. WYS's Executive Director confirms that this letter was sent on September 18, 2024. Dkt. 38 ¶ 9 (Declaration of Roger Levesque) [hereinafter "Levesque Decl."]. Moreover, the background check in question was ordered on July 26, 2024, while the report date was August 30, 2024. Dkt. 38-3, at 2. These dates are not, however, in dispute and do not alter whether a dispute of material fact exists here.

motions, Mr. Kalembo filed an opposition to WYS's motion but failed to attach the exhibits alluded to within his brief, Dkt. 42, and declined to file an opposition to NYSA's motion. Instead, Mr. Kalembo filed a motion to "complete summary-judgment record and, in the alternative, for relief from any expired deadline," which essentially asked to file the missing exhibits to his opposition to WYS's summary judgment motion, to file a late opposition to the NYSA summary judgment motion, and to extend the discovery deadline. Dkt. 46 (removing all caps). The Court has denied that motion in a separate order.

## DISCUSSION

Defendants argue that Mr. Kalembo has failed to demonstrate a genuine dispute as to any material fact such that they are entitled to judgment as a matter of law on all claims. The Court agrees with respect to the federal § 1981 claim but recommends declining supplemental jurisdiction over the state law claims and dismissing the state law claims without prejudice.

### 1. Legal Standards

When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam); *Okonowsky v. Garland*, 109 F.4th 1166, 1178 (9th Cir. 2024). Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the party opposing the motion, the court determines that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See Fed. R. Civ. P.* 56; *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010).

"A party opposing a properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial." *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322–23; *see also Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (per curiam). The opposing party may not rest on conclusory allegations or mere assertions, *see Taylor*, 880 F.2d at 1045, but must come forward with significant probative evidence, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). Where "the factual context renders [the nonmoving party's] claim implausible … , [that party] must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary" to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The materiality of facts is determined by looking to the substantive law that defines the elements of the claim. *See Anderson*, 477 U.S. at 248. Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The phrase "make and enforce contracts" means "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The rights protected by § 1981 are protected from impairment by both "nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

Courts apply the *McDonnell Douglas* burden-shifting analysis to § 1981 claims. *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). Under *McDonnell Douglas*, if the plaintiff establishes a prima facie case of racial discrimination, then defendant has the burden to establish that it had a legitimate, non-discriminatory reason for its actions. *Id.* If the defendant meets that burden, then the burden shifts back to plaintiff to demonstrate that the non-discriminatory reason identified by defendant was mere pretext for intentional discrimination. *Id.* (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). To establish a prima facie case, the plaintiff needs to provide only minimal evidence that "'does not even need to rise to the level of a preponderance of the evidence.'" *Id.* (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)). However, the plaintiff must establish intentional discrimination; disparate impact is insufficient to establish a claim under § 1981. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 383 n.8, 391 (1982); *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 470 F.3d 827, 837 (9th Cir. 2006) (en banc).

**2. Section 1981 Claim Against NYSA**

Mr. Kalembo has failed to establish a prima facie case of racial discrimination against defendant NYSA; NYSA has demonstrated a legitimate, non-discriminatory reason for

terminating Mr. Kalembo's employment contract; and Mr. Kalembo has not demonstrated that the asserted violation of a non-compete clause was mere pretext for racial discrimination.

First, Mr. Kalembo has not established a prima facie case that NYSA intentionally discriminated against him based on race. Although NYSA stated that it terminated his contract as a coach for violating a non-compete clause, NYSA Notice of Termination 1, Mr. Kalembo "believes the real reason was **retaliation** for forming his own coaching program," Complaint 3 (emphasis in original). First, if NYSA's real reason for terminating his contract was for forming his own coaching program, there is no plausible allegation of intentional racial discrimination. Second, Mr. Kalembo's own assertion of forming his own coaching program appears to support rather than dispute NYSA's assertion that he had violated a non-compete clause. Third, the only basis for linking NYSA's action with race is Mr. Kalembo's unsupported assertion that "the relevant boards and committees—composed mostly of White and Latino members—have demonstrated **bias against Black individuals** who attempt to operate their own clubs." Complaint 4 (emphasis in original). This contention fails to establish a prima facie case for two reasons. One, as the party opposing summary judgment, Mr. Kalembo may not rest on conclusory allegations or mere assertions but must come forward with significant probative evidence. *See Anderson,* 477 U.S. at 249–50; *Taylor*, 880 F.2d at 1045. Two, Mr. Kalembo's assertion of racial discrimination appears to rely upon a question of disparate treatment, which cannot serve as a basis for intentional discrimination under § 1981. *See Gen. Bldg. Contractors Ass'n*, 458 U.S. at 383 n.8; *Kamehameha Sch./Bernice Pauahi Bishop Est.*, 470 F.3d at 837.

Second, NYSA has established that it had a legitimate, non-discriminatory reason for its actions. NYSA stated that Mr. Kalembo was terminated for violating a non-complete clause in his employment agreement that provided:

> "**Non-Compete**: Employee agrees to submit details to and obtain expressed written consent from Sound FC Director of Soccer, prior to performing any proprietary coaching outside of duties required by Sound FC. These proprietary activities include but are not limited to: Compensated private or small group coaching sessions within the operational boundaries of Sound FC OR with a registered Sound FC player, regardless of location. Other examples of proprietary coaching include but are not limited to camps, clinics, and other types of athletic instructional sessions. This shall be considered valid for the duration of this agreement."

NYSA Notice of Termination 1 (emphasis in original). Mr. Kalembo does not challenge any of the facts contained int the NYSA Notice of Termination, which included the following:

> Your decision to break the non-compete clause of your employment agreement. Renting fields, buying insurance, and charging families for both has been deemed a breach of your employment agreement. Families have already been charged for fields and insurance and charging them additional monies for items they have already paid for, is an unacceptable action for an NYSA employee.
>
> The insurance you obtained incorrectly stated Sound FC as the insured party, listed your home address, and had the city of the facility misspelled. It has been determined that this insurance agreement would expose the association to undue liabilities in the event of injury or worse.
>
> Additionally, the facility you rented is outside of our operational boundaries, which is a major violation of RCL rules and exposed the association to additional liabilities which are unacceptable.
>
> In completing these actions, you violated the non-compete clause of your signed employment agreement.

*Id.* The reasons for terminating Mr. Kalembo's employment agreement are quite clearly violations of his non-complete clause. Moreover, his own Complaint appears to assert that he was, in violation of that clause, being paid for privately training youth players without prior authorization by asserting that his damages included, "**Loss of clients**: Parents withdrew their children from Plaintiff's training, resulting in lost income." Complaint 4.

Third, Mr. Kalembo indicates no support that plausibly demonstrates that his violation of the non-complete clause was mere pretext for intentional discrimination. Nowhere is his race mentioned and nowhere can race be plausibly inferred to be the reason for the termination of his employment.

The Court finds that NYSA should be granted summary judgment on Mr. Kalembo's § 1981 claim of intentional racial discrimination because there is no genuine dispute about any material fact such that NYSA should be granted judgment as a matter of law.

**3. Section 1981 Claim Against WYS**

Mr. Kalembo has failed to establish a prima facie case of racial discrimination against defendant WYS; WYS has demonstrated a legitimate, non-discriminatory reason for declining to authorize his continued authorization to serve as a youth soccer coach; and Mr. Kalembo has not demonstrated that the policy against authorizing coaches with multiple felonies was mere pretext for racial discrimination.

First, Mr. Kalembo has not established a prima facie case that WYS intentionally discriminated against him based on race. Mr. Kalembo asserts that he was able to coach for years before being disqualified based two federal felony convictions (the verity of which he does not dispute). Complaint 4. Mr. Kalembo disbelieves WYS's submission of evidence showing that Mr. Kalembo answered "No" to the questions about whether he had any criminal convictions without providing contrary evidence or showing that he had ever disclosed those convictions beforehand. Dkt. 42, at 5. Mr. Kalembo also admits that there have been no indications that WYS ever mentioned race in a derogatory way directed towards him. *Id.* at 6. His assertion of racial discrimination is therefore based entirely on his unsupported presumption that WYS already knew about his convictions, allowed him to coach in contradiction to its own policies,

and suddenly was motivated by racial animus (nowhere seen in the record) to change its behavior and disqualify him. One, Mr. Kalembo has presented no evidence that he ever disclosed his prior felony convictions. Two, he has presented no evidence that WYS previously knew about his felony convictions and then allowed him to coach. Three, at best Mr. Kalembo makes a conclusory allegation that WYS, in contradiction to its own written policies, allows non-Black coaches to coach despite felony convictions while Black coaches cannot. Mr. Kalembo has failed to make anything other than conclusory, unsupported allegations of discrimination that are insufficient to establish a prima facie case of intentional racial discrimination. *Id.* at 5–6.

Second, WYS has provided evidence that they disqualified Mr. Kalembo from coaching because he failed to disclose his felony convictions and the WYS policy was to disqualify individuals from coaching who had been convicted of certain crimes within the past seven years. As part of his application to work as an NYSA coach, in April 2024, Mr. Kalembo completed WYS's general background check form that asked about criminal convictions. Levesque Decl. ¶ 7. Mr. Kalembo responded "No" to the question, "Have you been convicted of any crime (includes Misdemeanors)?" *Id.*; Dkt. 38-2, at 2. On September 14, 2024, in verifying his background history, WYS discovered two disqualifying federal convictions for attempt and conspiracy to commit fraud and for money laundering.[3] Levesque Decl. ¶ 8; Dkt. 38-3, at 2–3. WYS requires all adults in its programs to submit to annual background checks. Dkt. 38-1, at 2. If an individual has been convicted of certain crimes within the last seven years, "the Risk Management Director will notify the Applicant that he or she has been screened out due to the

[3] A September 2021 press release from the U.S. Attorney's Office in the Northern District of Georgia notes that "Gabriel Kalembo, a previously convicted fraudster who laundered the fraudulent assets, h[as] been sentenced to federal prison" for "four years and two months in prison to be followed by two years of supervised release, and . . . ordered . . . to pay $298,008.71 in restitution." Dkt. 39-4, at 1, 3.

criminal conviction, subject to the Disqualification and Appeal procedure." *Id.* at 3. The list of crimes, which is non-exclusive, includes financial crimes such as theft, embezzlement, and extortion. *Id.* at 3–5. Moreover, in disqualifying Mr. Kalembo from coaching based on his felony convictions, WYS offered Mr. Kalembo the opportunity to appeal the decision. Levesque Decl. ¶¶ 9–11. Mr. Kalembo chose not to appear in-person at the appeal hearing, offering his testimony entirely through e-mail communications that were reviewed. *Id.* ¶ 12; *see* Dkts. 38-5, 38-6. The WYS appeals board upheld the decision that Mr. Kalembo's 2017 and 2021 felony convictions and his failure to disclose them disqualified him from participating in any activities and events under the jurisdiction of WYS. Dkt. 38-6. WYS therefore has demonstrated legitimate, non-discriminatory reasons for disqualifying Mr. Kalembo from coaching youth soccer.

Third, Mr. Kalembo has not demonstrated that WYS's policy against authorizing coaches with serious, recent felonies constituted a mere pretext for racial discrimination. In fact, Mr. Kalembo has not raised a plausible allegation that WYS even considered race when screening him out for having been convicted of recent, serious felonies and for having not disclosed that fact. Mr. Kalembo does not dispute the verity of his felony convictions. Complaint 5. Those convictions alone constituted a non-pretextual reason for disqualifying him from coaching.

**4. State Law Claims**

Because the Court recommends granting summary judgment in favor of NYSA and WYS on the sole federal § 1981 claim, the Court recommends declining to exercise jurisdiction over the remaining state law claims and dismissing without prejudice the claims of a violation of WLAD, tortious interference with business expectancy, and defamation. *See, e.g., Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) ("In the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward

declining to exercise jurisdiction over the remaining state law claims." (citation omitted)); *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed.").

## CONCLUSION

The Court recommends **GRANTING** summary judgment in favor of defendants NYSA (**Dkt. 40**) and WYS (**Dkt. 37**) on Plaintiff's claim of racial discrimination in violation of 42 U.S.C. § 1981. The Court recommends **DECLINING** supplemental jurisdiction over the state law claims and therefore **DISMISSING** without prejudice the remaining claims of a violation of WLAD, tortious interference with business expectancy, and defamation.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **October 26, 2026.** The Clerk should note the matter for **October 26, 2026**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed 18 pages. The failure to timely object may affect the right to appeal.

DATED this 5th day of October, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge